## JARVIS THOMPSON v. NANCY GLINN.

**Mental Capacity to Contract—Deed.**

> The deed of an insane person is not necessarily void. Such deeds stand on the same ground with the deeds of infants, and courts should not set them aside only when justice requires it, and only then on terms just to all parties.

APPEAL FROM SCOTT CIRCUIT COURT.

December 1, 1875.

OPINION BY JUDGE COFER:

June 24, 1863, the appellee conveyed to the appellant a tract of land in Scott county, containing eighteen acres, for the recited consideration of $717.00 in hand paid. In August, 1871, she brought this suit to have said deed set aside and cancelled.

She alleged that before and at the time of making said conveyance, she was of unsound mind and incapable of making a valid contract; that the only consideration for the conveyance was a negro woman and her child, then not worth over one-third as much as the land; that in consequence of her mental condition she was incapable of judging of the then value of slaves, but that the appellant, who was fully aware of the depreciation of their value in consequence of the war then pending, took advantage of her mental imbecility and induced her to trade her land for the slaves.

The appellant denied the material allegations of the petition, and averred that the facts were that the appellee had been the owner of the slaves, and had sold them to a negro trader, and afterwards, repenting of what she had done, desired to get them back, and induced him to go to the person to whom she had sold them, and buy them back for her; that he kept them in his possession from the fall of 1860, when he got them back, until the deed was made; and was at all times ready and willing to let her have them upon being reimbursed, and that being unable to refund the amount paid out by him in money, she conveyed him the land for that purpose at say $665, and let him have a note for $185.00, he having paid out for the slaves $850 in cash.

The evidence shows that she sold the slaves on the 12th of April, 1860, and that soon thereafter she became very desirous to get them back, and was greatly distressed because she had sold them; that, not having the money to repurchase them, she applied to several persons to buy them for her; and that the appellant finally consented to do so, and made the purchase in September, 1860. On the 27th of June, 1860, the appellee was found by a jury to be of unsound mind, and was sent to an insane asylum, where she remained until the 28th of September of that year, when she was discharged as restored; and in June following she was found by a jury to be of sound mind; and the appellant, who had been appointed her committee, was discharged. She subsequently recog-

nized her obligation to take the slaves and reimburse the appellant, and on the 24th of June, 1863, made the deed. In April, 1863, she was again found to be insane, and was sent to an asylum, where she remained until 1870, when, being again restored, she was discharged.

It is most probable that her aberration of mind was not caused by the distress consequent upon having sold the slaves; but there can be no doubt that her malady was greatly aggravated thereby; and it is equally clear that the appellant was induced to repurchase them by the request of herself and her friends, and that he did not do so on his own account. It also satisfactorily appears that at the time she requested him to purchase the slaves for her, and when she agreed to compensate him for his outlay by conveying to him the land, she was not insane, while it is equally clear that she was insane when she executed the conveyance. There is no evidence whatever of any importunity on the part of the appellant to induce her to make the conveyance, or of any bad faith or improper conduct on his part in the whole transaction. He paid $850 for the slaves, and not having been able to collect, the $185 note and the land, worth not exceeding $700, is all the return he has received therefor. Under such circumstances we do not think the deed should have been set aside. The deed of an insane person is not necessarily void. *Jenkins, et al., v. Jenkins,* 3 T. B. Mon. 327; *Hunt v. Weir,* 4 Dana 347; *Jones's Adm'r v. Perkins,* 5 B. Mon. 222; 2 Greenleaf on Evidence, Sec. 368. Such deeds stand upon the same ground with the deeds of infants. 2 Greenleaf 369; *Breckenridge's Heirs v. Ormsby,* 1 J. J. Marsh. 236. The chancellor will interfere to set them aside only when justice requires it. *Hopson v. Boyd,* 6 B. Mon. 296, and then only upon such terms as will be just to all the parties interested. *Bailey v. Barnberger,* 11 B. Mon. 115; *Petty v. Roberts,* 7 Bush 410; 2 Kent's Commentaries 240. The same principle is recognized in *Coleman, et al., v. Frazer, et al.,* 3 Bush 300. At the time the appellant expended his money at the instance of the appellee, the slaves were worth the money he advanced for them; he advanced it for her benefit, and without any view to his own interest; his act was one of benevolence, and not of selfishness; it was approved by the appellee; and but for subsequent events, which neither could foresee, it is probable that all the advantage derived from the purchase would have resulted to her. It is certain that the appellant neither expected nor could have derived any pecuniary benefit from what

he did; and it would be unjust now to deprive him of the benefit of the partial indemnity which he has obtained.

As already said, the appellee was mentally competent to bind herself when she made the request of appellant that he would purchase the slaves for her, and also when she subsequently agreed to convey the land to reimburse him; and the circumstance that she was insane when she made the deed will not entitle her to have it set aside.

Judgment *reversed* and cause remanded with directions to dismiss the petition.

*Geo. E. Prewitt, A. Duvall, for appellant.*
*J. T. Robinson, for appellee.*